978 F.2d 1262
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael BEDELL, Defendant-Appellant.
 No. 91-2298.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 6, 1992.
Decided Oct. 27, 1992.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division; No. 90 C 767, Milton I. Shadur, Senior Judge.
 
 
 1
 N.D.Ill.
 
 
 2
 AFFIRMED.
 
 ORDER
 
 3
 Michael Bedell pleaded guilty to bank robbery, a violation of 18 U.S.C. § 2113(a), and received a sentence of 168 months pursuant to § 4B1.1 of the Federal Sentencing Guidelines ("Guidelines"). He raises three issues in this appeal: Whether the district court properly classified him as a career offender; erred by not detailing its reasons for so characterizing Bedell; or erroneously denied his motion to suppress an allegedly suggestive line-up identification. For the following reasons, we affirm.
 
 I.
 
 4
 In the span of two weeks in August of 1990, Michael Bedell robbed three different Chicago branches of the Pathway Financial Bank, making off with a total of $6,326. Then, on September 4, 1990, he robbed $8,723 from a fourth bank, Citibank Federal Savings. As in the three previous robberies, Bedell handed a teller a note in which he had written "I have a gun." While the teller filled an envelope with cash, Bedell promised to use the gun if she did not hurry up.
 
 
 5
 A tip from a taxi driver who refused to take him to the bus station led the Chicago police to apprehend Bedell, whom they discovered carrying a small toy gun and an envelope containing $8,723. The police immediately brought Bedell back to Citibank Federal Savings, where the teller identified him. Then they arrested him. After waiving his rights under Miranda v. Arizona, Bedell signed a confession admitting to his involvement in the bank robbery. The following day, the United States charged him with the robbery of Citibank, a violation of 18 U.S.C. § 2113(a). A superseding indictment charged Bedell with three additional counts of bank robbery.
 
 
 6
 Six out of seven witnesses to the four separate bank robberies identified Bedell from a six-man line-up. The seventh witness could not make a positive identification, but chose Bedell as the one who most closely resembled the robber. Bedell moved to suppress the identification on the ground that his skin color was different in tone from the other black males in the line-up. The district court found that any differences in skin tone was not suggestive and denied the motion.
 
 
 7
 Bedell pleaded guilty to two of the four bank robberies and stipulated to having committed the two others. A presentence report recommended that Bedell be sentenced as a career offender subject to § 4B1.1 of the Guidelines. In addition to his bank robbery spree in the summer of 1990, Bedell had been twice convicted in 1989, once for attempted armed robbery and once for the robbery of a video store. The plea agreement reserved Bedell's right to contest his classification as a career offender. At the sentencing hearing, however, Bedell's attorney stated that he no longer objected to sentencing under the career offender provision. Indeed, defense counsel specifically agreed to the career offender characterization.
 
 
 8
 Finding Bedell eligible for this enhancement provision, the district court sentenced him to 168 months imprisonment, the lowest possible sentence within the applicable Guideline range.[1] In addition, the sentence is to be followed by a period of four years of supervised release. This appeal raises challenges to the district court's (1) sentencing of Bedell as a career offender; (2) alleged failure to articulate its reasons for applying the career offender provision; and (3) denial of Bedell's motion to suppress evidence developed from the line-up. As the discussion below explains, none of these arguments has merit.
 
 II.
 A. Career offender classification
 
 9
 In appeals concerning the application of the Guidelines, this court conducts plenary reviews of district court decisions. United States v. Bigelow, 914 F.2d 966, 973 (7th Cir.1990), cert. denied, 111 S.Ct. 1077 (1991); United States v. DeCicco, 899 F.2d 1531, 1535 (7th Cir.1990). We determine the proper scope of sections of the Guidelines, a question of law. Accordingly, our review of such matters is de novo. Bigelow, 914 F.2d at 966.
 
 
 10
 Section 4B1.1 provides for significant enhancement of a defendant's sentence if the district court determines that he fits the definition of a career offender. In order to so qualify, (1) the defendant must have been at least 18 years old at the time of the instant offense; (2) the instant offense must have culminated in a conviction for a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant must have at least two previous felony convictions for either a crime of violence or a controlled substance offense. United States Sentencing Commission, Guidelines Manual § 4B1.1 (Nov. 1990).
 
 
 11
 Bedell does not dispute that he meets the first and second conditions. He contends, however, that the district court improperly applied § 4B1.1 by failing to examine the underlying facts of his conviction for his 1989 robbery of a video store.[2] This particular conviction, he claims, fails to qualify as a "felony" or a "crime of violence" as defined by § 4B1.1. In urging that we remand so that the district court can consider the facts of the 1989 robbery, Bedell states that this court has yet to resolve the manner in which a sentencing court is to apply the career offender provision. In effect, he suggests that two conflicting lines of cases in our circuit have muddled this area of law. We disagree.
 
 1. Waiver
 
 12
 Any challenge a defendant fails to raise before a sentencing court is waived on appeal. United States v. Blythe, 944 F.2d 356, 359 (7th Cir.1991); United States v. Livingston, 936 F.2d 333, 335 (7th Cir.1991), cert. denied, 112 S.Ct. 884 (1992). Consequently, this court can reverse the decision of the district court only if it committed "plain error." Fed.R.Crim.P. 52(b); United States v. White, 903 F.2d 457, 466 (7th Cir.1990); United States v. Wynn, 845 F.2d 1439, 1442-43 (7th Cir.1988).
 
 
 13
 At sentencing, Bedell not only did not object to the errors he now alleges with respect to the district court's application of the Guidelines, but also expressly admitted that he fit the definition of a career offender. Defense counsel stated
 
 
 14
 We have done further investigation on the matter and it appears that he does fall into the definition [of a career offender].... [T]here really isn't any dispute any more about the application of the guidelines between myself and the government. Unfortunately our investigation has revealed that there aren't any problems with regard to the calculations as well as to the application of the guidelines. I think, Judge, that the conclusions that were reached by the probation officer are basically what the guidelines set out. So we don't have any dispute in that regard.[3]
 
 
 15
 Government's Brief, filed July 10, 1992, at 11. As the government points out, Bedell cannot now attempt to withdraw this concession after his lawyer investigated the career offender issue and decided that it was not worth pursuing. By failing to contest the district court's invocation of § 4B1.1, Bedell waived his right to appeal his classification as a career offender.
 
 
 16
 Despite the waiver doctrine, we can reverse Bedell's classification as a career offender if there has been plain error--that is, if the court has committed "particularly egregious errors." United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). More specifically, the error in question must be "obvious as well as significantly prejudicial" to be reversible. Peretz v. United States, --- U.S. ----, 111 S.Ct. 2661, 2678, 115 L.Ed.2d 808 (1991). If the district court's error is " 'palpably wrong' " and " 'it is necessary in order to avert an actual miscarriage of justice.' " Blythe, 944 F.2d at 359 (citations omitted), reversal is warranted. For the reasons stated below, we find that the district court committed no such miscarriage of justice. Accordingly, Bedell waived the career offender issue.
 
 
 17
 2. Application of the career offender provision
 
 
 18
 Even if Bedell could proceed to the merits of his argument, he would be unable to demonstrate that he is ineligible for the career offender provision. The crux of Bedell's objection to his classification concerns the district court's reliance on the language of § 4B1.1 and its Commentary. Bedell asserts that rather than focusing exclusively on the Guideline language defining prior robbery convictions as felony offenses or crimes of violence, the district court instead should have inquired into the underlying facts of the predicate robbery conviction. Moreover, he suggests that this circuit's "unclear, inconsistent body of case law", Reply Brief, filed Aug. 5, 1992, at 2, has failed to reconcile these different means by which to apply the career offender provision.
 
 
 19
 This assertion is specious. In point of fact this very panel announced the only circumstance in which a district court may inquire into the facts underlying a prior felony conviction. In United States v. Jones, 932 F.2d 624 (7th Cir.1991)--a case Bedell does not address in his main brief--the court stated that "the only time a judge is entitled to conduct an inquiry into the facts underlying the prior offense is where that offense can be committed without violence within the meaning of section 4B1.1." Id. at 625. The crucial question, then, is whether Bedell's prior conviction for robbery qualifies as a crime of violence.
 
 
 20
 And the answer, provided by this court in at least two recent cases, is that robbery in Illinois is a "crime of violence" for purposes of the Guidelines. See Jones, 932 F.2d at 625; United States v. Carter, 910 F.2d 1524, 1532 (7th Cir.1990), cert. denied, 111 S.Ct. 1628 (1991). Two arguments support this proposition. First, § 4B1.2 defines crime of violence as "any offense under federal or state law ... that ... has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(1)(i). A conviction for robbery in Illinois fits this description because the state defines robbery as the taking of property "by the use of force or by threatening the imminent use of force." ILL.REV.STAT. ch. 38, para. 18-1(a). As a result, robbery under Illinois law clearly "is an offense that has as an element the use or threatened use of force." Carter, 910 F.2d at 1532 (7th Cir.1990).
 
 
 21
 Second, the Commentary Application Notes to § 4B1.2 specifically mention robbery as a per se crime of violence. See Commentary Application Notes to Sentencing Guidelines § 4B1.2(1) at 1. We previously have stated that courts should give the Application Notes substantial weight in interpreting the Guidelines. United States v. White, 888 F.2d 490, 497 (7th Cir.1989); United States v. Pinto, 875 F.2d 143, 144 (7th Cir.1989). Noting the Guidelines' unequivocal characterization of robbery as a crime of violence, we held in Jones that a district court is neither required nor permitted to consider the facts relating to a particular conviction. Id. at 625. The court observed, however, that a district court judge would be obliged to inquire into the facts of a prior offense in cases in which "a particular criminal statute might define 'robbery' idiosyncratically, dispensing with an element that made it a crime of force or threatened force against the person." Id.
 
 
 22
 Bedell believes that he has uncovered an idiosyncracy in the Illinois robbery statute. Unlike § 4B1.1 of the Guidelines, the Illinois statute does not explicitly require that the use of force or threat of imminent force be directed against a person. From this seeming omission Bedell detects a pregnant silence allowing for robbery to occur when force is used or threatened against property. This interpretation would seem to broaden rather than narrow the definition of robbery. Besides failing to see how such a reading of the robbery statute would help Bedell, we disagree with his contention that one can commit robbery in Illinois by directing or threatening force against an object.
 
 
 23
 In distinguishing the crime of theft from robbery, the Supreme Court of Illinois has observed that robbery cannot occur " 'without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand.' " People v. Patton, 389 N.E.2d 1174, 1177 (Ill.1979) (citation omitted) (emphasis added). The Illinois appellate courts also uniformly discuss robbery in terms of the objective response of the person whose property has been taken. See People v. Thomas, 527 N.E.2d 974, 975 (Ill.App.Ct.1989) ("That the taking was by use or threat of force is proven where the fear of the victim was of such a nature as in reason and common experience would induce a person to part with his property for the sake of his person.") (citations omitted); People v. Taylor, 545 N.E.2d 289, 292 (Ill.App.Ct.1988) ("Among the elements which must be established to prove robbery, the State must establish beyond a reasonable doubt that the force alleged was of such a character as to temporarily suspend the victim's power to exercise his will and that the force preceded or was contemporaneous with the taking of the property.") (citation omitted), rev'd on other grounds, 541 N.E.2d 677 (Ill.1989). A subjective feeling of fear will not support a robbery conviction unless that fear was reasonable. Id., 545 N.E.2d at 292. Because we presume that the Taylor court was not referring to the subjective feeling of fear experienced by a pencil or even a rabbit, we find that the Illinois robbery statute requires a person to use force or threaten the imminent use of force against a live human being.
 
 
 24
 We see nothing idiosyncratic about the Illinois state legislature's definition of robbery. Therefore the district court correctly followed the mandate of Jones by sentencing Bedell under the career offender provision without taking into account the particular facts underlying his conviction for robbery of the video store.
 
 
 25
 Despite the straightforward rule of Jones, Bedell insists that a conflicting line of cases in the circuit permits the district court in all instances to undertake an examination of the facts pertaining to a predicate conviction. In support of this argument, Bedell relies primarily on United States v. Alvarez, 914 F.2d 915 (7th Cir.1990), cert. denied, 111 S.Ct. 2057 (1991), and United States v. Terry, 900 F.2d 1039 (7th Cir.1990). Alvarez, he argues, "stands for the proposition that it is more than reasonable for a sentencing court to explore all angles of the prior convictions to ensure that a Defendant properly falls within the ambit of the career offender provision." Reply Brief, at 9.
 
 
 26
 In actuality, Alvarez concerned the district court's examination of the facts underlying an instant conviction, not a prior one. Be that as it may, the district court in Alvarez took into account the particular facts of the crime--possession of a firearm by a convicted felon--in order to determine whether Alvarez had used physical force sufficient to constitute a "crime of violence" within the meaning of the career offender provision. On appeal, we upheld the district court's consideration of the conduct of this particular defendant during the commission of this particular crime. The court did not, however, suggest explicitly or implicitly that such an examination is appropriate in every application of § 4B1.1. Rather, a district court has discretion to "review not only the elements of the offense as charged, but also the specific conduct of the defendant as well", id. at 918, if and only if the offense in question is not listed as a per se crime of violence--for instance, possession of a firearm by a convict.[4] Far from contradicting this holding, Jones expresses precisely the same rule. Id. at 625.
 
 B. Articulation of sentencing rationale
 
 27
 Bedell next contends that the district court committed clear error by failing to articulate its reasons for enhancing his sentence pursuant to § 4B1.1. The sentence, he argues, therefore is invalid. The government responds that the sentencing court had no need to articulate its specific reasons because Bedell conceded that he was eligible for career offender status. Neither position is correct.
 
 
 28
 In general, a sentencing court does not have to explain its reason for imposing a certain term so long as the sentence falls within the range designated by the Guidelines. United States v. Veteto, 920 F.2d 823, 827 (11th Cir.1991) (citing United States v. Alamin, 895 F.2d 1335, 1337 (11th Cir.), cert. denied, 111 S.Ct. 196 (1990)). But when the sentencing range exceeds twenty-four months, a sentencing court is required to state "the reason for imposing a sentence at a particular point within the range". 18 U.S.C. § 3553(c)(1) (1992). A sentencing court fulfills that obligation when it " 'it indicates the applicable Guidelines range, and how it was chosen.' " United States v. Morrison, 946 F.2d 484, 504 (7th Cir.1991) (quoting United States v. Georgiadis, 933 F.2d 1219, 1223 (3d Cir.1991)).[5] A defendant is not entitled to a remand for resentencing, however, unless he raises an objection to the district court's explanation at the time of sentencing. United States v. Caicedo, 937 F.2d 1227, 1236 (7th Cir.1991); Livingston, 936 F.2d at 333 (7th Cir.1991). Bedell's failure to object at sentencing, therefore, waives this argument. Caicedo, 937 F.2d at 1236; United States v. Heilprin, 910 F.2d 471, 474 (7th Cir.1990).
 
 
 29
 C. Suppression of evidence from line-up identification
 
 
 30
 Bedell also argues that the court clearly erred by denying his motion to suppress an allegedly suggestive line-up identification. This point has no merit because any arguments regarding suppression became moot when Bedell pleaded guilty.
 
 
 31
 The United States Supreme Court has held that a criminal defendant who pleads guilty waives the right to challenge alleged violations of constitutional rights that are unrelated to the plea agreement. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267, 111 S.Ct. 1602, 1608, 113 L.Ed.2d 664 (1973). See also Borre v. United States, 940 F.2d 215, 217 (7th Cir.1991); United States v. Brown, 870 F.2d 1354, 1360 (7th Cir.1989).
 
 
 32
 If Bedell wished to challenge the constitutionality of the line-up identification, he should have gone to trial. In the alternative, he could have pleaded conditionally guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2) and preserved the right to appeal the denial of his motion. Cf. Brown, 870 F.2d at 1360. Because he pleaded guilty unconditionally, however, Bedell lost the opportunity to contest this claim.
 
 III.
 
 33
 For the reasons set forth above, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Bedell's Criminal History Category of VI and Offense Level of 30 yielded a sentencing range of 168 to 210 months. See United States Sentencing Commission, Guidelines Manual § 4B1.1 (Nov. 1990)
 
 
 [2]
 He bases this argument on the assertion that (1) the sentence he received did not resemble a typical felony punishment and (2) the events pertaining to the robbery do not meet the definition of "crime of violence."
 
 
 [3]
 Both the government and the probation officer maintained that Bedell should be sentenced as a career offender
 
 
 [4]
 Likewise, United States v. Terry, 900 F.2d 1039 (7th Cir.1990), held that a sentencing judge may consider the facts underlying a prior conviction in applying § 4B1.1. As in Alvarez, Terry involved a crime not specifically listed in the Application Notes to § 4B1.2. "Aggravated battery is not one of the offenses enumerated in the application note to § 4B1.2 and thus the court properly turned to an examination of the underlying facts to determine whether the specific conduct for which the defendant was convicted, by its nature, involved a substantial risk that physical force would be used." Id. at 1042
 
 
 [5]
 See also United States v. Johnson, 935 F.2d 47, 51-52 (4th Cir.1991) ("The guidelines and accompanying policy statements, coupled with Rule 32[,] mandate an open, on-the-record, reason-supported determination of the principal components of a guidelines sentence, including the determination of the applicable guidelines range."), cert. denied, 112 S.Ct. 609 (1991)