UNITED STATES of America, Plaintiff,

v.

William Maurice SMITH, Defendant.

No. CR 96–2140.

United States District Court,
N.D. Iowa,
Eastern Division.

May 16, 1997.

288

Thomas G. Lininger, Asst. U.S. Attorney, Cedar Rapids, IA, for Plaintiff, U.S.

Thomas P. Frerichs, Frerichs Law Office, P.C., Waterloo, IA, Carter H. Stevens, Beecher Law Firm, Waterloo, IA, for Defendant, William Maurice Smith.

## OPINION and ORDER

MELLOY, Chief Judge.

This matter is before the Court on Defendant's Motion to Dismiss (doc. # 19), filed January 21, 1997. Defendant was charged on December 11, 1996 with four counts of firearm violations. A superseding indictment was filed on February 21, 1997, stating:

Count 1: The defendant possessed a firearm, after he had been convicted of a misdemeanor crime of domestic violence, in violation of Title 18, United States Code, Section 922(g)(9).

Count 2: The defendant knowingly made false and fictitious written statements to a licensed gun dealer in connection with the purchase of a firearm, in violation of Title 18, United States Code, Section 922(a)(6).

Count 3: On November 15, 1996, the defendant, who was then under indictment for a crime punishable by imprisonment for a term exceeding one year, did knowingly receive a firearm, this in violation of Title 18, United States Code, Section 922(n).

The indictment stems from an incident on November 17, 1996, when Defendant shot Lauralee Smith, his wife and mother of his child. Previously, Defendant had been convicted of misdemeanor assault against Lauralee in 1994. Despite the fact that Defendant could have been charged under Iowa's newly

enacted domestic assault statute, Defendant was charged under Iowa Code section 708.1, simple assault, for the 1994 incident. Defendant plead guilty to the simple assault charge.

Defendant provides four basis for his first Motion to Dismiss: 1) the Iowa statute for simple assault, to which Defendant plead guilty, does not have as elements the use of force or the attempted use of force, and the existence of a domestic relationship as required by 18 U.S.C. § 921(a)(33); 2) section 921(a)(33) is unconstitutionally vague; 3) Counts 2, 3, and 4 of the original indictment are multiplicitious; 4) Defendant was not indicted in Colorado for sexual assault when he purchased a gun and his plea agreement did not provide for punishment of a term of imprisonment to last longer than one year, thus Defendant could not have been in violation of the section 922(n)[1] as charged in Count 3.

## DISCUSSION

### Elements of Prior Conviction

#### Use of Force

■ Count I charges Defendant with violating 18 U.S.C. § 922(g)(9) which states in part:

It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 921(a)(33) defines "misdemeanor crime of domestic violence" as an offense that is a misdemeanor under Federal or State law that

has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian

1. The parties have agreed that the determination of the fourth basis for dismissal involves factual issues not properly addressed in a motion to

dismiss. Thus, the Court will not address the fourth basis.

of the victim, by a person with whom the victim shares a child in common, a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

Defendant was convicted in 1994 of assault under Iowa Code section 708.1 which provides that a person commits assault if he or she does any of the following:

1) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

2) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

3) Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Defendant argues that his 1994 assault conviction cannot be a "misdemeanor crime of domestic abuse" under section 921(a)(33) because section 708.1 does not have as an element the use of or attempted use of physical force because it can be violated in a non-violent manner.[2]

Courts have faced this issue in the context of enhanced penalty and career offender statutes. For example, 18 U.S.C. § 924(e)(2)(B)(i) and U.S.S.G. § 4B1.2(1)(i) require predicate offenses that constitute a "violent felony."[3] In cases where the state statute allows the predicate offense to be committed in either a violent or a non-violent manner, courts may go beyond the fact of conviction of the predicate offense to determine whether that offense falls within the federal statute's definition of "violent felony." *United States v. Wright,* 957 F.2d 520, 522 (8th Cir.1992); citing *Taylor v. United States,* 495 U.S. 575, 591, 110 S.Ct. 2143,

2154, 109 L.Ed.2d 607 (1990) (where section 924(e)(2)(B)(ii)'s inclusion of burglary as a violent felony could be committed in either violent or non-violent means pursuant to state statute, court may "go beyond mere fact of conviction" and examine the indictment or information and jury instructions to determine whether prior conviction constituted section 924(e)(2)(B)(ii) burglary). The *U.S. v. Wilson,* 951 F.2d 586 (4th Cir.1991) court held that, because a robbery conviction required the taking of property "by force and violence, or by intimidation," the use or threatened use of force is an element of robbery, and a conviction of robbery was a conviction of a violent felony for purposes of section 4B1.2(1). *Wright,* 957 F.2d at 521. However, the court noted that when an offense can be committed without violence, the court may examine the underlying facts of the offense. *Id.* at 522.

 The documents to which a court may look for underlying facts vary depending on whether the prior conviction involved a jury trial or a plea bargain. When a defendant was convicted by a jury, the court looks to the charging instrument and the jury instructions. *Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160. However, when a defendant enters a guilty plea to the predicate offense, the court may broaden its scope of investigation. *Taylor,* 932 F.2d at 708–09. Exactly what documents should be examined by a court to determine the underlying facts is not settled. See e.g., *United States v. Bonat,* 106 F.3d 1472, 1476 (9th Cir.1997) (indictment, judgment of conviction, signed guilty plea, and "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes" considered proper documents); *United States v. Adams,* 91 F.3d 114 (11th Cir. 1996) (court looked to "easily produced and evaluated court documents" to determine whether prior crime was "violent felony" where defendant entered a guilty plea);

---

**2.** For example the statute can be violated by "offensive touching."

**3.** 18 U.S.C. § 924(e)(2)(B)(i) and U.S.S.G. § 4B1.2(1)(i) provide that the term "violent felo-

ny" includes any crime that has an element the use, attempted use, or threatened use of physical force against another person.

*United States v. Palmer*, 68 F.3d 52, 59 (2nd Cir.1995) (same).

Defendant argues that *Taylor* and its progeny are inapplicable to this analysis because they all involved felony predicate offenses. In Iowa, no record is made of misdemeanor proceedings. Thus, Defendant contends, there exists no record from which the Court can determine the underlying facts of the offense to which Defendant pled guilty. Specifically, the Court cannot ascertain which facts listed in the charging instrument were admitted by Defendant. While this is a valid concern, especially in cases where only the charging document is available, a defendant can be allowed to present evidence to establish that the offense to which he plead guilty differed from the offense described in the charging document.

The Court finds instructive the analysis under section 924(e)(1) noted in *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994). To determine whether a defendant had committed three prior convictions that resulted from acts "committed on occasions different from one another ...", the court must ascertain whether each of the prior convictions arose out of a "separate and distinct criminal episode." *Id.* at 1019. After the government has established that the defendant has three prior violent felony convictions, "[t]he burden then shifts to the defendant to establish by a preponderance of the evidence that the prior convictions occurred on a single 'occasion,' and thus cannot be the basis for sentence enhancement." *Id.* at 1019 n. 6.

*Taylor* warns of detailed and time-consuming examinations of the underlying facts of the predicate offense. *Taylor*, 495 U.S. at 601, 110 S.Ct. at 2159–60. However, allowing the defendant the opportunity to challenge the Government's evidence does not have to become a wide ranging probe.

In Defendant's case, the Court can look to the charging instrument to determine whether Defendant committed a "misdemeanor crime of domestic violence" as defined in section 921(a)(33).

The Complaint filed in Defendant's 1994 assault case provided:

That on 09–13–94, at approximately 1230 hours, said Defendant did approach the victim, Lauralee Lorenson, while she was at work, at the Western Home, in Cedar Falls. That there was a verbal dispute as a result of this contact. That during the course of the verbal dispute, said Defendant did grab the victim by the throat, and did also push her down, while keeping her from leaving the area of the elevator, which they were in, at the time of the dispute.

(Gov. ex. 3) A written statement provided by Defendant at his initial appearance confirmed the facts as provided in the Complaint. (Gov. ex. 4). Defendant pled guilty to assault, Iowa Code section 708.1. The Court does not doubt that grabbing a person by the throat, pushing them down, and restraining them constitutes a use of force. Because the assault committed by Defendant clearly involved the use of force, it may qualify as a "misdemeanor crime of domestic violence" despite the fact that section 708.1 does not require the use of force as an element.

**Domestic Relationship**

◼ Defendant also argues that section 708.1 cannot constitute the predicate offense for section 921(a)(33) because section 708.1 does not meet section 921(a)(33)'s requirement that the predicate offense have a domestic relationship element such that the use of force be "committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." Defendant relies heavily on the argument that the plain language of section 921(a)(33) requires the predicate offense to have a domestic relationship element. The Government argues that the plain language of the statute does not require such an element, and that if the statute is "arguably ambiguous," legislative history does not support Defendant's interpretation of the statute.

As a general rule, the plain meaning of a statute controls. *Robinson v. Shell Oil Co.,*

—- U.S. ——, ——, 117 S.Ct. 843, 847, 136 L.Ed.2d 808 (1997) (inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent") *quoting Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Hennepin County Med. Ctr. v. Shalala,* 81 F.3d 743, 748 (8th Cir.1996). When a statute is ambiguous, however, the court may look to legislative history to resolve the ambiguity. *U.S. v. Gonzales,* —— U.S. ——, ——, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (no reason to resort to legislative history when statute language was straightforward). Thus, the first step for this Court is to determine whether section 921(a)(33) is ambiguous, keeping in mind that:

> "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner,* 513 U.S. 115, 117–19, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994). In other words, "the meaning of statutory language, plain or not, depends on context." *Id.* (internal quotation omitted). As the parties remind us, "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Hennepin County Med. Ctr.,* 81 F.3d at 748 (internal quotation omitted). At the same time, we must "seek to interpret the statute in a way that includes every word and clause." *Id.*

*Pelofsky v. Wallace,* 102 F.3d 350, 353 (8th Cir.1996); see also *Robinson,* —— U.S. at ——, 117 S.Ct. at 846 ("plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"). ·

■ Defendant interprets section 921(a)(33)'s language "as an element" to modify both the use of force requirement and the relationship requirement. This interpretation would be logical if the use of force and the domestic relationship were one element, however, the Court believes that they are two separate elements[4] While the use of force and the relationship requirement are listed together in section 921(a)(33), other statutes also list individual elements without separating them into individual subsections. Thus, the inclusion of both the use of force and the domestic relationship requirements in one sentence does not mandate that they be treated as one element. Clearly section 921(a)(33) requires the Government to show that a predicate offense was committed with the use or attempted use of force, and that the offense was committed by one of the individuals listed in that section.

■ Once it is determined that the use of force is separate from the domestic relationship requirement, the Court must decide whether the "as an element" language modifies both requirements.[5] Because Congress

---

4. For example, 18 U.S.C. § 111 provides that "whoever forcibly assaults, resists, opposes, impedes, intimidates or interferes with any person designated in section 1114 of this title [as officers and employees of the United States] while engaged in or on account of the performance of his official duties", ... shall be guilty of an offense against the United States. The elements for assaulting a federal officer are 1) forceful assault, 2) done voluntarily and intentionally, 3) against an officer employed by the federal government. Eighth Cir. Manual of Model Jury Instructions, Criminal, No. 6.18.111 (1996). Similarly, the offense of deprivation of rights under color of law, 18 U.S.C. § 242 requires 1) action taken under color of state law, 2) wilfully to deprive the rights, of 3) an inhabitant of any state of the United States, despite the statute's singular list of requirements. *United States v. Jackson,* 235 F.2d 925, 927 (8th Cir. 1956).

5. Defendant resists the application of any rules of statutory construction or comparison to simi-

larly worded statutes prior to a finding that section 921(a)(33) is ambiguous. It is clear from two recent Supreme Court cases, however, that such interpretive aids can be implemented in order to determine whether a statute is ambiguous. In *U.S. v. Gonzales,* —— U.S. ——, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997), the Court found that legislature's use of the term "any other term of imprisonment" unambiguous *after* it had looked to other cases interpreting the use of the word "any," and recognized that in other parts of the same statute the legislature had further limited "any crime" to federal crimes. Similarly, in *Robinson v. Shell Oil Co.,* —— U.S. ——, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Court determined that Title VII's definition of "employee" was ambiguous after noting that other statutes were more specific and provided a temporal element such as "former employees," the Title VII language used no temporal qualifier, and the

chose to use "element" rather than "elements," the element requirement appears only to modify the use of force element that the language immediately precedes. See e.g. *United States v. Green,* 902 F.2d 1311, 1312 (8th Cir.1990) (Congress would have chosen plural, not singular, words had its intent been to effectuate Defendant's interpretation); *United States v. Freisinger,* 937 F.2d 383, 390 (8th Cir.1991) ("A statute which prefaces the object of the offense with the word 'a' unambiguously authorizes singular units of prosecution."). Thus, had Congress intended to require both the use of force and a domestic relationship to be elements of the predicate offense, it would have chosen to use "elements" instead of the singular.[6]

This conclusion is supported by courts' interpretations of similar language in other statutes. See *United States v. Jones,* 965 F.2d 1507, 1521 (8th Cir.1992) ("We assume that the authors of section 942(c) intended to duplicate Congress's similar schemes for punishing repeat offenders and interpret section 924(c) *pari passu* with statutes with similar language."); *Rockney v. Blohorn,* 877 F.2d 637, 640 (8th Cir.1989) (Congress may properly be presumed to have recognized that courts were likely to interpret the language of new statute as it has been interpreted in the nearly identical language of the older statute). The language "as an element" frequently modifies the use or attempted use of force in statutes defining the terms "crime of violence" or "violent felony." See e.g. 18 U.S.C. §§ 16, 373, 924(c)(3)(A), 924(e)(2)(B)(i) and 28 U.S.C. § 540A(c). The "as an element" language modifies only the use of force elements in these similar statutes.[7] Thus, Congress' use of language nearly identical to other statutes where the "as an element" language modifies only the use of force requirement supports this Court's conclusion that only the use of force element

is modified and required to be an element of the predicate offense. Therefore, the Court concludes that the plain language of section 921(a)(33) does not require the predicate offense to have a domestic relationship element.

Even if the statute were ambiguous, the legislative history of section 921(a)(33) would lead the Court to the same conclusion. The sponsor of the legislation that became section 921(a)(33), Senator Lautenberg, introduced it as an amendment to both the Interstate Stalking Punishment and Protection Act and the Treasure, Postal Service, and General Appropriations Act. While no committee discussion is available, statements made by Senator Lautenberg on the Senate floor are instructive in divining legislative intent. The Senator's statements provide no indication that section 921(a)(33) was intended to require a domestic relationship element in the predicate offense. In fact, his comments demonstrate the opposite. The amendment was proposed to remedy the disparate treatment between those persons convicted of a felony involving domestic assault and those convicted of misdemeanors involving domestic assault:

> Under current Federal law, it is illegal for persons convicted of felonies to possess firearms, yet, many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of a misdemeanor. In fact, most of those who commit family violence are never even prosecuted. But when they are, one-third of the cases that would be considered felonies, if committed by strangers, are instead filed as misdemeanors. The fact is

---

use of "employee" in a number of other Title VII provisions meant something different than "current employee."

**6.** Congress clearly recognizes the distinction between requiring one element and several elements. See e.g. 42 U.S.C. § 14071(a)(3)(B) ("The term 'sexually violent offense' means ... an offense that has as its elements engaging in physical contact with another person with intent to commit aggravated sexual abuse or sexual

abuse ..."); 18 U.S.C. § 3559(c)(2)(A) (term "assault with intent to commit rape" means an offense that has as its elements engaging in physical contact with another person or using or brandishing a weapon against another person with intent to commit aggravated sexual abuse or sexual abuse).

**7.** The Court recognizes that these statutes differ from the one at issue here by setting out the use of force element as a separate subdivision from the other, usually alternative, elements.

that in many places domestic violence is not taken as seriously as other forms of brutal behavior. Often acts of serious spouse abuse are not even considered felonies.

142 Cong. Rec. S10377–01. Senator Lautenberg repeatedly states his intention that the statute be broadly enforced:

> There is no reason for [people] who beat[ ] their wives or abuse[ ] their children to own a gun ... This amendment would close this dangerous loophole and keep guns away from violent individuals who threaten their own families, people who have shown that they cannot control themselves and are prone to fits of violent rage directed, unbelievable enough, against their own loved ones. The amendment says: Abuse your wife, lose your gun; beat your child, lose your gun; assault your ex-wife, lose your gun; no ifs, ands, or buts.

142 Cong. Rec. S10377–01. When discussing the enforcement of the statute and its association with the *Brady* law, which mandates a waiting period prior to the purchase of handguns, Senator Lautenberg stated:

> ... convictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence. Therefore, it will not always be possible for law enforcement authorities to determine from the face of someone's criminal record whether a particular misdemeanor conviction involves domestic violence, as defined in the new law.

142 Cong. Rec. S11872–01.

Other senators also spoke in support of the Lautenberg amendment. In her statements in support of the amendment, Senator Feinstein articulated her understanding of the amendment's scope: "This amendment looks to the type of crime, rather than the classification of the conviction. Anyone convicted of a domestic violence offense would be prohibited from possessing a firearm." 142 Cong. Rec. S10379–01. Senator Dodd stated that the amendment would "prevent anyone convicted of any kind of domestic violence from owing a gun." 142 Cong. Rec. S12341–01.

Clearly the Senators quoted above intended and anticipated a broad application of section 921(a)(33). Defendant's interpretation, however, would not provide such application. As amici point out in their brief, only seventeen of the fifty states and Puerto Rico have a law that would qualify under section 921(a)(33) if the domestic relationship was a required element of the predicate offense. Such an interpretation would clearly thwart the sponsor Senators' intent, especially upon recognition that a number of the sponsors represent states that do not have laws that would constitute an predicate offense using Defendant's interpretation.

Finally, the legislative history reveals that the language "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" was added to the statute very shortly before the legislation was passed. Senator Laughtenberg inserted the "as an element" language when he replaced the originally proposed language that required the predicate offense to be a "crime of violence" against the listed individuals. Senator Laughtenberg stated:

> the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence.

142 Cong. Rec. S11872–01. Thus, the Senator did not indicate that the newly added "as an element" language was to apply to the domestic relationship requirement, and the inclusion of the language for the purpose of clarifying the term "crime of violence" strongly suggests that it was not intended to modify the domestic relationship requirement.

Because the plain language of section 921(a)(33) does not require the predicate offense to have a domestic relationship element, Iowa Code section 708.1 can constitute a "misdemeanor crime of domestic violence" as defined in section 921(a)(33). Thus, De-

fendant is not entitled to dismissal on this ground.

**Vagueness**

■ Defendant argues that, if section 708.1 can constitute a "misdemeanor crime of domestic violence," 921(a)(33) is unconstitutionally vague. Section 921(a)(33), Defendant contends, fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by statute, fails to establish minimal guidelines to govern law enforcement, and invites arbitrary and capricious enforcement. In determining whether a statute is unconstitutionally vague, courts consider: 1) whether the statute fails to give a person of ordinary intelligence fair notice that his contemplated conduct is for-. bidden by the statute, *United States v. Donahue*, 948 F.2d 438, 441 (8th Cir.1991) ("One does not have to be a rocket scientist to know that bank robbery is a crime") quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); and 2) whether it is so indefinite that it encourages arbitrary and erratic arrests and convictions. *Donahue*, 948 F.2d at 441, quoting *Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979) (quotations omitted).

■ The language of section 921(a)(33) appears to give fair notice of the conduct prohibited by it. The Eighth Circuit has held that the term "force or threat of force" is a readily understandable term used in everyday speech. *United States v. Dinwiddie*, 76 F.3d 913, 924 (8th Cir.1996) (meaning of "force or threat of force" is "quite clear"). In addition, the statute's list of persons against whom the force need be directed is clear and straightforward. At best, section 921(a)(33) might be understood to require the use of force and a domestic relationship as elements of the predicate offense. This does not, however, satisfy Defendant's burden of establishing the first prong of the vagueness test, because the fact that a statute is capable of two interpretations does not, in itself,

establish vagueness. *Williams v. Brewer*, 442 F.2d 657, 660 (8th Cir.1971)

In response to the second prong of the vagueness test, Defendant argues that section 921(a)(33) fails to establish guidelines to govern law enforcement. Based on the statute's language, its legislative history, and the ATF interpretation of the statute the Court finds that the statute is to be applied to *all* persons convicted of misdemeanors involving the use or attempted use of force against any of the persons listed in the statute. The statue provides a bright line for law enforcement, and does not encourage arbitrary and erratic arrests and convictions. Thus, Defendant has failed to establish that section 921(a)(33) is unconstitutionally vague.

**Multiplicity**

■ Defendant argues that Counts 2–4 [8] are multiplicitious and should be combined as one Count. After Defendant filed his first Motion to Dismiss, the Government filed a superseding indictment which combined Counts 2 and 3 of the original indictment as one count. The Government argues that Count 4 of the original indictment should remain separate from the combined Counts 2 and 3 (now Count 2).

■ The Court agrees that Count 3 should be separate from the Count 2 in the superseding indictment despite the fact that both counts arise out of the same set of facts. "[W]here the same act or transaction constitutes a violation to two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Count 2 requires the Government to show that Defendant made material misstatements to a firearms dealer regardless of whether he actually received a firearm, while Count 3 requires a showing that Defendant actually did receive a firearm. 18 U.S.C. §§ 922(a)(6) and 922(n). Because each count requires proof of

---

8. Count 2 charged Defendant with making a material misstatement in connection with his purchase of the Grendel .380 pistol in violation of 18 U.S.C. § 922(a)(6); Count 3 charged Defendant with lying about his age in connection with

the same firearm purchase in violation of § 922(a)(6), and Count 4 charged Defendant with receiving a firearm while he was under indictment in violation of section 922(n).

different facts, they are not duplicitous and should remain separate.

Accordingly, **It Is Ordered:**

Defendant's first Motion to Dismiss is denied.