**UNITED STATES of America,
Plaintiff,**

v.

**Robert Lee PFEIFER, a/k/a Barney
Pfeifer, Defendant.**

**No. CR 02–30028.**

United States District Court,
D. South Dakota,
Central Division.

May 24, 2002.

ment characterizing DeWall's eleven-year struggle as operating "below the Secretary's

radar."

1004

Mikal G. Hanson, Assistant United States Attorney, Pierre, SD, for Plaintiff.

Patricia A. Carlson, Carlson Law Office, Pierre, SD, for Defendant.

### ORDER

KORNMANN, District Judge.

Defendant filed an alternative motion (Doc. 10) to dismiss or to suppress certain evidence. U.S. Magistrate Judge Moreno conducted an evidentiary hearing on May 6, 2002, and filed and served a report and recommendation (Doc. 23). The magistrate has by virtue of a letter of May 21, 2002, corrected two typographical errors in the report and recommendation, neither of which adversely impact either party. The Court has conducted a *de novo* review of the transcript of the hearing (Doc. 16) (which essentially is nothing more than oral arguments), the transcript of the arraignment of the defendant in state court on May 9, 1985, the transcript of the sentence hearing of June 6, 1985, and the presentence report, all in the same case in state court, the transcript of the arraignment and sentence hearing in the case of State of South Dakota v. Tom L. Odom, and finally all papers and documents in connection with a proceeding in state court

seeking to expunge the prior criminal conviction involving the assault on the defendant's then wife.

Defendant has filed objections (Doc.27) to the recommendation of the magistrate and the objections have been considered. The facts of this case may present a certain amount of unfairness and overreaching. Congress makes those decisions, however, not the federal judiciary. The executive branch makes similar decisions. The current Attorney General, since taking office, has directed federal prosecutors to not plea bargain any case in which a charge has been made involving the use of a firearm in a crime of violence. The arguments of the defendant are clearly foreclosed by *United States v. Smith*, 171 F.3d 617 (8th Cir.1999) and the cases cited therein. What the Iowa Supreme Court may have held is of no legal significance in a criminal case in federal court in South Dakota.

The objections should be overruled, the alternative motion denied and the report and recommendation accepted. Now, therefore,

IT IS ORDERED that the alternative motion to dismiss or to suppress evidence in the nature of documents and records (Doc. 10) is hereby denied.

IT IS FURTHER ORDERED that the objections (Doc. 27) should be and are hereby overruled and the report and recommendation (Doc. 23) should be and is hereby adopted.

### REPORT AND RECOMMENDATION FOR DISPOSITION OF DEFENDANT'S ALTERNATIVE MOTION TO DISMISS OR TO SUPPRESS

MORENO, United States Magistrate Judge.

#### I.

[¶ 1] Defendant, Robert Lee Pfeifer, a/k/a Barney Pfeifer (Pfeifer) filed an alterna-

tive Motion to dismiss the case or to suppress evidence on April 23, 2002. Plaintiff, United States of America (government) filed written responses to the Motion. A hearing was subsequently held on May 6, 2002, at which the parties stipulated that the Court could receive and consider the records on file in connection with Pfeifer's 1985 simple assault conviction in South Dakota state court (Haakon County Cr. No. 85–12). After lengthy oral argument, the Court took the Motion under advisement.

[¶ 2] Because Pfeifer's Motion is a dispositive one, the Court is only authorized to determine the same on a report and recommendation basis. Pursuant to 28 U.S.C. § 636(b)(1), the Court does now make and propose the following report and recommendation for disposition of the Motion.

## II.

[¶ 3] In May, 1985, Pfeifer struck his wife, Diane Pfeifer, during a domestic dispute in the couple's home. He was charged with simple assault and thereafter pled guilty to this offense. On June 6, 1985, he received a 90–day suspended jail sentence.

[¶ 4] More than a decade and-a-half later, Pfeifer was charged federally with possessing a firearm after being convicted of a misdemeanor crime of domestic violence, 18 U.S.C. §§ 922(g)(9) and 924(a)(2), and with attempting to acquire a firearm from a licensed dealer by making a false written statement, 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Pfeifer has pled not guilty to these two charges and was released, on conditions, pending trial.

[¶ 5] Following his arraignment and not guilty pleas, Pfeifer filed a Motion seeking to dismiss the charges against him or in the alternative to suppress evidence of his 1985 simple assault conviction. He claims that the conviction was not for a "misde-meanor crime of domestic violence" and that he was not "convicted" for purposes of both federal charges because he was not represented by counsel and did not knowingly and intelligently waive his right to counsel in his prior assault case. He also claims that prosecuting him for violating § 922(g)(9) would contravene the Ex Post Facto Clause found in Article I, § 9 of the United States Constitution and would subject him to "cruel and unusual punishment" under the Constitution's Eighth Amendment. Finally, he contends that any evidence relating to the 1985 conviction, including his unsuccessful attempt in 2000 to expunge the conviction, should, at a minimum, be suppressed and the government prohibited from using such evidence at trial, except for impeachment purposes.

## III.

[¶ 6] On September 30, 1996, the President signed into law, as part of the Omnibus Consolidated Appropriations Act of 1997, the Lautenberg Amendment to the Gun Control Act of 1968, 18 U.S.C. § 1921, *et seq.* This Amendment makes it "unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ... possess in or affecting commerce, any firearm...." 18 U.S.C. § 922(g)(9). 18 U.S.C. § 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as an offense that (1) is a misdemeanor under federal or state law and (2) "has, as an element, the use or attempted use of physical force ... committed by a current or former spouse ... [or] by a person with whom the victim shares a child...." 18 U.S.C. § 924(a)(2) subjects persons who knowingly violate § 922(g)(9) to a fine, imprisonment or both.

## IV.

[¶ 7] Pfeifer initially argues that his 1985 simple assault conviction cannot constitute

the predicate offense for § 921(a)(33)(A) because the offense he was convicted of was not a "misdemeanor crime of domestic violence." Pfeifer was convicted in 1985 under SDCL 22–18–1 which, at the time, provided that a person was guilty of simple assault if he:

(1) Attempts to cause bodily injury to another, other than a law enforcement officer engaged in the performance of his duties, and has the actual ability to cause the injury;

\*     \*     \*     \*     \*     \*

(5) Intentionally causes bodily injury to another which does not result in serious bodily injury.

A simple assault conviction under either of these subsections was then, and is still now, a Class 1 misdemeanor carrying a maximum penalty of a $1,000 fine, one year imprisonment in a county jail, or both the fine and the imprisonment. SDCL 22–18–1; 22–6–2.

[¶ 8] Pfeifer was charged with and pled guilty to an Information that alleged that on or about May 5, 1985, he did "wilfully and unlawfully, attempt to cause bodily injury to another, namely: Diane Pfeifer, and had the actual ability to cause the injury...." In his factual basis statement and again in his presentence interview with a court services officer, Pfeifer admitted that he hit his wife over a dispute involving their children.[1]

■ [¶ 9] Because the assault committed by Pfeifer clearly involved the use or attempted use of physical force, it qualifies as a "misdemeanor crime of domestic violence" within the meaning of § 921(a)(33)(A). *United States v. Smith,*

171 F.3d 617, 620–621 (8th Cir.1999). Having satisfied the predicate misdemeanor offense requirement found in § 922(g)(9) and § 922(a)(6) the government may move forward with its case against Pfeifer if, but only if, he was in fact "convicted" of the assault offense under federal law.

## V.

■ [¶ 10] Section 921(a)(33)(B)(i) provides that a person is not considered to have been "convicted" of a misdemeanor crime of domestic violence unless he "was represented by counsel in the case, or knowingly and intelligently waived [his] right to counsel...." Pfeifer, as already stated, pled guilty to the assault offense, but did so without benefit of counsel. At his May 9, 1985 arraignment, the following exchange occurred between Pfeifer and the state trial court:

THE COURT: You're charged with simple assault. Do you have a lawyer?

THE DEFENDANT: No, I don't.

THE COURT: Do you want a lawyer to represent you?

THE DEFENDANT: No, I don't.

THE COURT: Do you understand that you're entitled to have a lawyer during all stages of these proceedings. If you don't have money or property to hire a lawyer, the Court will appoint one for you at county expense. You understand that?

THE DEFENDANT: I understand that.

THE COURT: You want to proceed without a lawyer?

---

1. In the presentence report, Pfeifer acknowledged that he hit his wife in the face with an open hand. His wife corroborated this, saying that Pfeifer hit her "on the side of the face and neck and head ... with an open hand."

The Sheriff's investigative report, attached to the presentence report, reflects that Pfeifer's wife had a bump behind [her] left ear, bruises on [her] left jaw and around [her] left ear.

THE DEFENDANT: I want to proceed without a lawyer.

THE COURT: Come right up here and the State's Attorney will read the Information to you.

MR. BARNETT: Let the record reflect I am now filing the Information, that a copy of the Information has been handed to Mr. Pfeifer.

(Information read.)

THE COURT: Mr. Pfeifer, you're charged in this Information with simple assault. It charges that you attempted to cause bodily injury to Diane Pfeifer and had the actual ability to cause the injury. It's alleged this occurred on the 5th of May of this year in Haakon County. Do you understand the charge against you?

THE DEFENDANT: Yes, I do.

THE COURT: This is a Class 1 misdemeanor which means the maximum penalty is 12 months in the county jail or a $1,000 fine or both. You understand that?

THE DEFENDANT: Now I do.

THE COURT: You were here in the courtroom when I advised Mr. Odom of his constitutional and statutory rights.[2]

THE DEFENDANT: Yes, I was.

THE COURT: Did you hear those rights?

THE DEFENDANT: Yes, I did.

THE COURT: Do you have any question about your rights?

THE DEFENDANT: No.

THE COURT: Are you ready to enter your plea?

THE DEFENDANT: Yes, I am.

THE COURT: What is your plea?

THE DEFENDANT: Guilty.

This colloquy aptly demonstrates, and allows the Court to conclude as a matter of law, that Pfeifer knowingly and intelligently waived his right to counsel under § 921(a)(33)(B)(i). *Smith*, 171 F.3d at 621–22; *but see United States v. Akins*, 276 F.3d 1141, 1147–48 (9th Cir.2002) (rec-

2. Earlier, the trial court gave this advisement in Pfeifer's presence:

THE COURT: At this time I wish to advise you of your constitutional and statutory rights. You have a right to represent yourself in person and be represented by a lawyer. You have the right to a speedy, public trial by an impartial jury of this county. You have the right to have compulsory process served for the purpose of obtaining witnesses to testify in your behalf. That simply means that the Court would order witnesses to come here and testify for you at your request. You have the right to meet the witnesses against you face to face here in open court and have a right to question those witnesses and you have the right not to be compelled to be a witness against yourself. Do you understand those rights? THE DEFENDANT [MR. ODOM]: Yes. THE COURT: In the event that you enter a plea of not guilty, you will be presumed innocent throughout the course of the trial. The burden is on the State to prove every element of the charge contained in this Information and the State must prove that you are guilty beyond a reasonable doubt before you could be convicted of this charge. The jury must return a unanimous decision. In other words, all 12 members of the jury would have to agree before you could be convicted and if the jury did return a verdict of guilty and it [was] accepted by the Court, it would constitute a conviction of this charge. In the event that you enter a plea of guilty, you will be waiving your constitutional and statutory rights. In other words, if you plead guilty, then you wouldn't be entitled to a jury trial or to confront the witnesses against you or remain silent. Also, if you enter a plea of guilty, you will be admitting the charge that is contained in this Information and if your plea of guilty is accepted by the Court, it would constitute a conviction just as if you were tried by a jury and the jury found you guilty. Do you understand these things? The transcript of Odom's May 9, 1985 arraignment and sentencing is contained in the record now before the Court.

ord did not establish that a defendant chose to waive his right to counsel with "eyes open").[3] This being the case, Pfeifer has a "conviction" that triggers the two firearms offenses charged in the Indictment.

## VI.

■ [¶ 11] Pfeifer asserts that the § 922(g)(9) charge, as applied to him, violates the Ex Post Facto Clause. The Constitution prohibits Congress from passing an *ex post facto* law. U.S. Const. art. I, § 9, cl. 3. "To fall within the *ex post facto* prohibition, a law must be retrospective— that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24,-28–29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). Boiled down, Pfeifer argues that § 922(g)(9) alters the definition of criminal conduct, increases the punishment for his assault offense and attaches unforeseeable consequences to a criminal case that was completed approximately 17 years ago.

[¶ 12] Courts, however, have concluded that the activity prohibited by § 922(g)(9) is the post-enactment possession of a firearm, not the pre-enactment misdemeanor crime of domestic violence. *United States v. Boyd*, 52 F.Supp.2d 1233, 1236–37 (D.Kan.1999), *aff'd*, 211 F.3d 1279 (10th Cir.2000); *United States v. Meade*, 986 F.Supp. 66, 69 (D.Mass.1997), *aff'd*, 175 F.3d 215 (1st Cir.1999); *National Assoc. of Government Employees v. Barrett*, 968 F.Supp. 1564, 1575–76 (N.D.Ga.1997), *aff'd*, 155 F.3d 1276 (11th Cir.1998); *see also United States v. Brady*, 26 F.3d 282 (2d Cir.), *cert. denied*, 513 U.S. 894, 115 S.Ct. 246, 130 L.Ed.2d 168 (1994) (holding that regardless of the date of the defendant's prior conviction, the crime of being a felon in possession of a firearm was not committed until the effective date of the statute). Consequently, this statute does not impose an additional or more severe penalty for Pfeifer's prior assault conviction, but rather punishes him for criminal conduct that he engaged in after passage of the law. *United States v. Farmer*, 73 F.3d 836, 841 (8th Cir.), *cert. denied*, 518 U.S. 1028, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996); *see also, United States v. Mitchell*, 209 F.3d 319, 322–23 (4th Cir.), *cert. denied*, 531 U.S. 849, 121 S.Ct. 123, 148 L.Ed.2d 78 (2000).

■ [¶ 13] Pfeifer nevertheless contends, without citation to any legal authority, that he had no idea at the time of his domestic violence conviction that his ability to own or possess a gun would be forever lost. Such an assertion, however, whether couched in the form of an *ex post facto*, due process or other challenge, has already been rejected by the Eighth Circuit

---

**3.** Pfeifer does not argue that his waiver was invalid because he was unaware of the nature of the assault charge filed against him, the possible penalties he faced under state law at the time or the dangers and disadvantages of self-representation. The Court "will not presume that [Pfeifer] did not have enough information for a knowing and intelligent waiver [for purposes of § 921(a)(33)(B) ] when [he] himself makes no such assertion." *Wabasha v. Solem*, 694 F.2d 155, 159, n. 4 (8th Cir. 1982). Pfeifer had a constitutional right to proceed *pro se* in the state court proceedings, *see Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and chose to exercise this right. The fact that he was never told and did not know, 17 years ago, that Congress would create a disabling status based on his assault conviction does not make the waiver an unknowing and unintelligent one. *See United States v. Hutzell*, 217 F.3d 966, 968–69 (8th Cir.2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1408, 149 L.Ed.2d 349 (2001); *Smith*, 171 F.3d at 622.

and other courts. *See Hutzell,* 217 F.3d at 967–69; *see also United States v. Hancock,* 231 F.3d 557, 561–65 (9th Cir.2000), *cert. denied,* 532 U.S. 989, 121 S.Ct. 1641, 149 L.Ed.2d 500 (2001); *Mitchell,* 209 F.3d at 322–24; *United States v. Beavers,* 206 F.3d 706, 708–10 (6th Cir.), *cert. denied,* 529 U.S. 1121, 120 S.Ct. 1989, 146 L.Ed.2d 815 (2000); *Boyd,* 52 F.Supp.2d at 1237; *United States v. Hicks,* 992 F.Supp. 1244, 1246 (D.Kan.1997). It follows then that Pfeifer's *ex post facto* assertions, regardless of how they are framed, must fail.

## VII.

██ [¶ 14] The same is true with respect to Pfeifer's Eighth Amendment argument. Even if state law does not allow for an expungement of Pfeifer's 1985 conviction, nevertheless, it is certainly not "cruel and unusual punishment" to prohibit a person who has physically assaulted his wife from possessing a firearm. *United States v. Lewis,* 236 F.3d 948, 950 (8th Cir.2001); *see also United States v. Jester,* 139 F.3d 1168, 1170–71 (7th Cir.1998) (punishment is based not only on the defendant's status as a convict, but also on his voluntary act of possessing a firearm). More importantly, inasmuch as Pfeifer's has yet to be found guilty, much less sentenced—even to a term of imprisonment—his argument is premature and cannot be properly reviewed at this time.[4]

## VIII.

██ [¶ 15] Lastly, Pfeifer contends that his prior conviction, as well as the transcript and evidence from his subsequent attempt to have the same expunged, should be suppressed. This contention is specious

and devoid of any merit whatsoever. Pfeifer's 1985 conviction is an element of the offenses charged in both counts of the Indictment. The government is required, in order to convict Pfeifer of the charged offenses, to prove that as of February 14, 2000 and October 11, 2001, he had been convicted of a misdemeanor crime of domestic violence.

[¶ 16] Similarly, the expungement proceedings help demonstrate that Pfeifer knew, by virtue of his earlier conviction, that he was prohibited from possessing a firearm. The mental state for prosecutions under §§ 922(g)(9) and 922(a)(6) is the lesser standard of "knowing." 18 U.S.C. § 924(a)(2); *see also, Beavers,* 206 F.3d at 708. These statutes do not require a showing that a defendant "knowingly" violated the law, but rather simply proof that the defendant "knowingly" possessed a firearm and made a false statement, respectively. *Hancock,* 231 F.3d at 562–63 (§ 922(g)(9)); *Hutzell,* 217 F.3d at 967–68 (§ 922(g)(9)); *United States v. Bledsoe,* 531 F.2d 888, 889–90, n. 1 (8th Cir.1976) (§ 922(a)(6)); *Cody v. United States,* 460 F.2d 34, 37–38 (8th Cir.), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972) (§ 922(a)(6)). The suppression of Pfeifer's state court record, therefore, is neither called for nor appropriate under the circumstances.

## IX.

[¶ 17] Based on the foregoing and in accordance with § 636(b)(1) of Title 28, it is accordingly

[¶ 18] RECOMMENDED that Pfeifer's alternative Motion to dismiss or to suppress

4. Indeed, it is impossible for the Court to conduct the necessary proportionality review until Pfeifer has been tried, convicted and sentenced to a prison term. Even if all of this occurs, only extreme sentences that are gross-

ly disproportionate to the crime committed are prohibited by the Cruel and Unusual Punishment Clause. *See Harmelin v. Michigan,* 501 U.S. 957, 997–98, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring).

**1010**

evidence, Docket No. 10, be denied in its entirety and with prejudice.